UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Victor Sivilli,<br><br>                               Plaintiff,<br><br>v.<br><br>Wright Medical Technology, Inc., et al.,<br><br>                              Defendants. | Case No.: 18-cv-2162-AJB-JLB<br><br>**ORDER GRANTING WRIGHT MEDICAL GROUP, INC.'S MOTION TO DISMISS (Doc. No. 4)** |

Before the Court is Wright Medical Group, Inc.'s motion to dismiss. (Doc. No. 4.) Wright Medical Group argues the Court lacks both specific and general jurisdiction over it in California and that it cannot be subjected to personal jurisdiction through any alter ego or agency theories. Agreeing with Wright Medical Group, the Court **GRANTS** its dismissal motion and **DISMISSES** them from the case. (Doc. No. 4.)

### I.     BACKGROUND

Plaintiff brings this products liability and negligence action against defendants Wright Medical Technology, Inc., ("WMT"), Wright Medical Group, Inc., ("WMG"), Wright Medical Group, N.V., and MicroPort Orthopedics, Inc. for alleged defects in a hip replacement device. (Doc. No. 1-3 at 2–3.) Plaintiff alleges defendants knew their hip replacement device "was prone to fail within a few years of implantation although hip implant devices typically last more than twenty years." (*Id.* ¶ 1.) Plaintiff asserts

1  "Defendants have long known that their Device tends to fracture at the location of the
2  highest tensile stress concentration in the Neck-Stem-Body transition of the Device even
3  during low or moderate physical activity." (*Id.*)

4  After the device was implanted into Plaintiff, he began to suffer "pain, debilitation,
5  and hospitalization, and was forced to undergo revision surgery because the Device was
6  defective and Defendants failed to warn adequately of the dangers of the Device." (*Id.* ¶ 2.)

## II.   LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this determination, a court reviews the contents of the complaint, accepting all factual allegations as true and drawing all reasonable inferences in favor of the nonmoving party. *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept legal conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664.

## III.   DISCUSSION

WMG argues the Court lacks general and specific jurisdiction over it in California and is also not subject to personal jurisdiction under an alter ego or agency theory. (Doc. No. 4-1.)

**1. General Personal Jurisdiction**

WMG asserts Plaintiff lacks general jurisdiction over it in California, a point which Plaintiff agrees with. Thus, the Court declines to analyze this issue.

**2. Specific Personal Jurisdiction**

WMG also asserts Plaintiff lacks specific jurisdiction over it in California. (Doc. No. 4-1 at 9–10.) Due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "A nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Courts apply a three-part test to exercise specific jurisdiction over a non-resident defendant:

> (1) the defendant either "purposefully direct[s]" its activities or "purposefully avails" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, i.e., it [is] reasonable."

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (alterations in original) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)). The burden is on the plaintiff to establish the first two prongs. *Axiom Foods*, 874 F.3d at 1068 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)). If the plaintiff satisfies the first two prongs, then the defendant must present a "'compelling case' that exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### a. *Purposeful Direction Test*

Where a case sounds in a tort, courts employ the purposeful direction test. *See Axiom Foods*, 874 F.3d at 1069 (citing *Schwarzenegger*, 374 F.3d at 802). The Court analyzes

purposeful direction under the *Calder* effects test, which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder v. Jones,* 465 U.S. 783 (1984)). All three parts of the test must be satisfied. *Schwarzenegger*, 374 F.3d at 805.

Here, WMG asserts it has not committed an intentional act aimed at California or that it caused any harm to be suffered in California. (Doc. No. 4-1 at 10.) WMG states it is just a holding company and is not involved in the facts of Plaintiff's claim. (*Id.*) Plaintiff gives three rebuttals.

First, Plaintiff asserts WMG is not a "mere 'holding company.'" (Doc. No. 11 at 10.) Plaintiff points to financial statements given to the Securities & Exchange Commission, press releases, and other marketing materials demonstrating "WMG's participation in the design, manufacture, distribution, and sale of the Profemur device." (*Id.*) In one SEC financial statement, it states "Wright Medical Group, Inc. (the Company) is a global orthopaedic device company specializing in the design, manufacture and marketing of reconstructive joint devices and bio-orthopaedic materials." (Doc. No. 11-2 at 4.) Later in the statement, it says "The Company offers a comprehensive line of products for hip joint reconstruction." (*Id.* at 11.) It goes on to state WMG is selling the hip implant replacement in the United States. (*Id.* at 15.)

WMG argues that even given those statements and other evidence Plaintiff presented, it still does not show "WMG had any involvement with the design, manufacture, marketing, or sale" of the device. (Doc. No. 13 at 3.) WMG also asserts Plaintiff fails to show WMG had any presence in California. (*Id.*) As to the financial statements specifically, WMG argues that "[t]he Form 10-K is an annual filing that publicly traded companies are required to send to the SEC" which "provide a comprehensive summary of the financial performance of WMG *and its subsidiaries*. They are not intended to, and do not, establish that WMG – as opposed to one of its subsidiaries – conducted a certain activity." (*Id.*)

Second, Plaintiff argues that WMG "relied upon California surgeons to design devices and tools, develop patented surgical techniques for use with its products, and train other surgeons." (Doc. No. 11 at 13.) Plaintiff states that "[b]y working with these California surgeons in the design, development, and promotion of its products and surgical techniques, WMG purposefully availed itself of the benefits and protections of California." (*Id.* at 14.) In response, WMG asserts that it was WMT, not WMG, which "retained orthopedic surgeon consultants in California and throughout the country to advise on the design of hip prosthetic devices. . . ." (Doc. No. 13 at 6.)

Finally, Plaintiff asserts WMG created a "Jimmy Connors marketing campaign," which Plaintiff claims WMG ran, as opposed to one of its subsidiaries. (Doc. No. 11 at 14.) This campaign included "press releases announcing its retention of Jimmy Connors to market the company's hip products. . . ." (*Id.*) Plaintiff attaches a press release which states that Jimmy Connors received a hip replacement in California and attended an annual meeting of Orthopaedic Surgeons in San Diego. (Doc. No. 11-5 at 2.) Plaintiff argues this campaign "gave [WMG] the opportunity to connect directly with patients like Mr. Sivilli." (Doc. No. 11 at 14–15.)

WMG retorts the "press release about Jimmy Connors is similarly misguided" because it "merely illustrates WMG as the publicly-traded consolidated holding company, reporting the efforts of its operating subsidiaries." (Doc. No. 13 at 7.) WMG reiterates "Plaintiff simply has not shown that WMG was directly involved in the design, manufacture, labeling, marketing, and/or sale of the" device. (*Id.*)

The Court finds Plaintiff has not met the burden showing WMG has sufficient contacts with California on its own or that it purposefully availed itself to the state. The only evidence Plaintiff has definitively tying WMG to California is the Jimmy Connors marketing campaign, however, that connection is tenuous because his only ties to California are the fact his own hip replacement surgery was done in the state and that he attended an annual meeting in San Diego. Neither of Connors' actions show WMG intended to direct itself at or avail itself in California.

### b. *Defendant's Forum-Related Activities*

WMG also states that Plaintiff has not shown it has a presence in California. (Doc. No. 4-1 at 10–11.) The Ninth Circuit has adopted a "but for" test where Plaintiff must show he would not have suffered an injury but for defendant's forum-related conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

Plaintiff argues WMG's forum-related conduct included marketing and selling the device in California and that the doctor who implanted the device on him received training from WMG—becoming "[i]n essence. . . a spokesperson for the Wright techniques. . . ." (Doc. No. 11 at 15–16.) Plaintiff states "[i]f not for WMG's California activities, particularly because of Wright's relationship with Dr. Chadha [Plaintiff's surgeon], Plaintiff would not have received a Profemur device, and he would not have suffered the injury here." (*Id.* at 16.)

WMG responds arguing it "did not – and does not – perform any activities in California. WMG has no employees, offices, or real estate in California, nor does it conduct or transact any business in California." (Reeves Decl., Doc. No. 4-1 at 10.) WMG concludes "Plaintiff will be unable to show that he would not have suffered an alleged injury but for WMG's conduct in California." (*Id.*) WMG includes this evidence in a declaration. (Doc. No. 4-3.) Amy Reeves is the Senior Director and Controller at WMT, which is a wholly owned subsidiary of WMG. (*Id.* at 2–3.) She states that WMG is a holding company with no employees and is the parent company of WMT and sole shareholder whose "primary business purpose is to hold convertible debt associated with the consolidated global operations of the operating subsidiaries for which it acts as a parent." (*Id.* at 3.) Further, she states the two are separate corporate entities and that WMG keeps its own separate accounting and banking records. (*Id.*) She also declares that "WMG does not advertise, market, or offer services for sale in California" and "did not and does not design, manufacture, label, market, distribute, sell, or provide warnings related to the hip implant components at issue in Plaintiff's Complaint." (*Id.*) Finally, Reeves states "[t]he FDA Clearance in December 2000 to sell the PROFEMUR hip system with a

modular neck component like the one at issue in this case was given to [WMT], not WMG." (*Id.* at 4.)

Taking this into consideration, the Court finds Plaintiff has not shown that but for WMG's actions he would not be injured. WMG did not market or sell the device, WMG did not even have a clearance for the device. WMG does not have employees in California, and thus Plaintiff cannot show Dr. Chadha's involvement was directly related to specific conduct attributed to WMG. Because WMG did not meet the first two factors establishing specific jurisdiction, the Court elects not to analyze the burden-shifting third prong regarding whether jurisdiction is reasonable. The Court notes, however, WMG's argument on this point is persuasive. (Doc. No. 4-1 at 11–12.)

    *c.*    **Alter Ego Theory**

WMG argues it is not subject to personal jurisdiction even under an alter ego theory. (Doc. No. 4-1 at 12.) "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). "However, in certain limited circumstances, the veil separating affiliated entities may be pierced to impute liability from one entity to the other." *Ranza*, 793 F.3d at 1071.

To impute jurisdiction under the alter ego test, a plaintiff "must make out a prima facie case '(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Doe v. Unocal*, 248 F.3d 915, 926 (9th Cir. 2001) (alterations in original) (quoting *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996)). The "unity of interest and ownership" prong of this test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* (internal quotation marks omitted).

Other than alleging that WMG merged with Wright Medical Group N.V. and is now operating under that name in the United States, Plaintiff includes no factual allegations regarding alter ego. (*See generally* Doc. No. 1-3.) WMG asserts they have "maintained corporate separateness." (Doc. No. 4-1 at 13.) Plaintiff argues that WMT and WMG are intertwined. (Doc. No. 11 at 17.) As evidence of this, Plaintiff points to the fact that the "Wright Defendants share the same address, phone number, and website." (*Id.* at 18.) Plaintiff also evidences this through the Form 10-k filed with the SEC and other documents, such as complaints, filed in other cases in other states. (*Id.*)

WMG retorts that courts have found that presenting themselves online as a single entity does not rise to the level of unity of interest required. (Doc. No. 13 at 10). WMG also asserts the Form 10-Ks fail to show unity as well because the SEC requires companies to file a consolidated form. (*Id.*)

WMG is correct that "courts recognize that separate corporate entities presenting themselves as one online does not rise to the level of unity of interests required to show companies are alter egos." *Corcoran*, 169 F. Supp. 3d at 984; *Payoda, Inc. v. Photon Infotech, Inc.*, No. 14-cv-04103-BLF, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015) ("marketing puffery" on a shared website "carries no weight in establishing whether a parent and its subsidiary are in fact alter egos"); *Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07–06073, 2008 WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [a company's] website and in its press releases simply do not rise to the day-to-day control required to impute the subsidiary's contacts to the parent").

Moreover, case law in the Ninth Circuit is clear in stating that "consolidating the activities of a subsidiary into the [parent company's] reports is a common business practice," *Doe*, 248 F.3d at 929 (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995), and "is allowed by both the Internal Revenue Service and the Securities and Exchange Commission." *Calvert*, 875 F. Supp. at 679; *see also Moody v. Charming Shoppes of Delaware, Inc.*, No. C 07-06073 MHP, 2008 WL 2128955, *2–4 (N.D. Cal. May 20, 2008) (finding that a parent corporation's use in its SEC report of phrases such as

"we hire," "our employees," and "we operated 2,409 stores in 48 states," was insufficient to confer personal jurisdiction to it). Furthermore, the Ninth Circuit has held that monitoring subsidiaries' performance and articulating general policies and procedures are appropriate parent activities. *Doe*, 248 F.3d at 926.

Here, the fact that WMG shares the same address, phone number, and website, and refers collectively to itself and its subsidiaries in its 10–K, does not establish unity between the companies nor render WMG's subsidiaries as mere instrumentalities of WMG. Thus, the Court finds WMG cannot be found to be the alter ego of its subsidiaries.

### d.   Agency Theory

Finally, WMG argues it cannot be subject to jurisdiction under an agency theory. (Doc. No. 4-1 at 13.) District Courts in the Ninth Circuit have expressed reservations that establishing agency for jurisdictional purposes is still possible post-*Daimler*, a Supreme Court case casting doubt on whether agency can be used to establish specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117 (2014). A recent Ninth Circuit opinion on the matter wrote:

> Notwithstanding *Daimler*'s express reservation on the question of agency theory's application to specific jurisdiction, more than one district court within our circuit has expressed some uncertainty on that point post-*Daimler*, as "the rationale set forth in *Daimler* . . . would seem to undermine application of [our agency test] even in specific jurisdiction cases."

*Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (quoting *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 982 (N.D. Cal. 2016) (quoting *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, No. 13-cv-01180-BLF, 2015 WL 4755335, at *5 (N.D. Cal. Aug. 11, 2015))). Nevertheless, assuming agency can still be used to establish specific jurisdiction, it requires a showing that the principal maintained control over the agent's actions.

Here, Plaintiff baselessly argues that if "WMT did not perform its sales functions, WMG, 'by itself or through a different company, would have to take on that role to reap the benefits of the enterprise.'" (Doc. No. 11 at 17 (quoting *In re Hydroxycut Mktg. & Sales*

1  *Practices Litig.*, 810 F. Supp. 2d 1100, 1119 (S.D. Cal. 2011).) Plaintiff only states "[a]s shown above, WMG takes an active role and is no mere holding company. It fully participated in the marketing of its products and took an active role in the day-to-day operations of WMT." (*Id.*)

WMG notes that the facts of this case are distinguishable from *Hydroxycut*—the case Plaintiff relies on. (Doc. No. 13 at 9.) In that case, the parent company had such an active role that if one of its subsidiaries failed to perform, the parent company had to step in to cover the role because all the subsidiaries were intertwined in producing necessary functions as the business model. (*Id.*) Here, Plaintiff has failed to show, beyond conclusory arguments, that such a link exists between the functions of WMG and WMT, such that if WMT stopped performing its functions, WMG would even be capable of fulfilling that role—a bald assertion WMG flatly rejects. (*Id.*) Thus, the Court finds that Plaintiff failed to show that WMT was acting as an agent of WMG for jurisdiction purposes.

### IV.   CONCLUSION

Thus, finding no basis for jurisdiction over WMG, the Court **GRANTS** their motion to dismiss. (Doc. No. 4.) Wright Medical Group, Inc. is hereby **DISMISSED** from the action.

**IT IS SO ORDERED.**

Dated:  June 24, 2019

Hon. Anthony J. Battaglia
United States District Judge